1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY HOWE,<br><br>                                      Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>                                      Defendant. | Case No. 20-cv-252-MMA (DEB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; AND DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>[Doc. No. 16] |

In her Second Amended Complaint ("SAC"), Emily Howe ("Plaintiff") alleges seven causes of action: (1) breach of implied contract; (2) breach of implied covenant of good faith and fair dealing; (3) wrongful termination in violation of public policy; (4) wrongful termination in bad faith; (5) negligent supervision; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress.  *See* Doc. No. 14 ("SAC").[1]  Target Corporation ("Defendant") moves to dismiss each cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike Plaintiff's prayer for

---

[1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

attorneys' fees from the SAC pursuant to Federal Rule of Civil Procedure 12(f).  *See* Doc. No. 16.  Plaintiff filed an opposition to Defendant's motion, and Defendant replied. *See* Doc. Nos. 18, 20, 22.  The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. No. 23.  For the reasons set forth below, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss and **DENIES** Defendant's motion to strike.

## I. BACKGROUND[2]

Plaintiff's action arises from "Plaintiff's wrongful termination by Defendant due to her relationship with another of Defendant's former employees, Ryan Murphy ['Murphy']."  SAC ¶ 1.

In March 2010, Plaintiff began her employment with Defendant as a Store Team Lead in a Chula Vista, California Target store.  *Id.* ¶ 13. During Plaintiff's nine-year employment, she was given positive performance reviews and never a negative review. *Id.* ¶ 14.  Defendant provided Plaintiff with several salary increases, which were more than those given to similar employees.  *Id.* ¶¶ 15–16.  In March 2013, Defendant promoted Plaintiff to Store Director.  *Id.* ¶ 17.  Moreover, Defendant used Plaintiff to improve underperforming store locations.  *Id.* ¶ 18.  In 2017, Defendant transferred Plaintiff to an Oceanside, California Target store to help it improve.  *Id.* ¶¶ 19–20. During her two years at the Oceanside store, Plaintiff earned two "substantial bonuses." *Id.* ¶ 21.

Some of a Store Director's job duties involves team leadership and motivation.  *Id.* ¶ 22.  For example, Store Directors use recognition to reward employees for positive performance, such as "birthday gifts/celebrations, baby showers, wedding gifts, etc."  *Id.*

---

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

¶ 26.  To meet this end, Defendant entrusts Store Directors with "corporate expense credit cards and the 'Purchasing Card Program'" ("PCard").  *Id.* ¶ 23.  The PCard is a corporate expense card provided to supervisory employees to use for various team activities, purchases, or meals.  *Id.* ¶ 27.  Store Directors' recognition spending per person is capped.  *Id.* ¶ 28; *see also id.* ¶ 29.  PCard usage is guided by the "Purchasing Card Program Policy and Procedure Manual" and several other documents.  *Id.* ¶ 24. Defendant also "had an informal policy regarding team member recognition expenditures" ("Recognition Policies").  *Id.* ¶ 25.  Defendant did not provide Plaintiff with formal training on the Recognition Policies, written recognition policy, or PCards. *Id.* ¶¶ 30–31.  Additionally, Defendant's Employee Handbook does not provide details on the Recognition Policies.  *Id.* ¶ 31.

Superiors instructed Store Directors "to engage in certain expense practices in a manner inconsistent with the guidelines set forth in the PCard Policies and alleged Recognition Polices."  *Id.* ¶ 32.  For example, District Team Leads provided Store Directors with "limited informal instructions . . . on how to use PCards and requisition gift cards sold by Target for reimbursement."  *Id.* ¶ 33.  These included instructions to exceed the cap on recognition expenses.  *Id.*  Store directors covered excess recognition expenditures through using their own funds and subsequently reimbursed themselves through "requisitioning gift cards at Target stores."  *Id.* ¶¶ 36–37.  "The requisition of gift cards involves activation of a gift card . . . using Target funds."  *Id.* ¶ 34.  Store Directors could requisition gift cards for various recognition purchases.  *See id.* ¶ 38. Requisitioned gift cards served as reimbursement: when employees used personal funds to cover recognition expenses that exceeded the cap, the employee would use the gift card as personal funds.  *See id.* ¶¶ 39–40.  Defendant instructed Plaintiff and other employees to use this practice ("Reimbursement Practice") and approved PCard use that "were inapposite to the guidelines set forth in Defendant's PCard policies and alleged Recognition Polices."  *Id.* ¶¶ 41– 42.

Plaintiff claims that the disjuncture between written policy and practice "set Store Directors up for failure." *Id.* ¶ 43.  Plaintiff witnessed Store Directors use the Reimbursement Practice, which did not impact their employment status. *Id.* ¶ 45.  In the past, "the administrative assistant of the Senior Director who served as Plaintiff's superior" approved excess recognition expenses. *Id.* ¶ 48.  Before Plaintiff's termination, "Defendant did not confront, reprimand, or address Plaintiff's use of the Reimbursement Practice for [r]ecognition expenses." *Id.* ¶ 54.

In December 2018 and seven months before her termination, Plaintiff decided to plan a recognition event for her team, which included go-carts and dinner. *Id.* ¶¶ 56, 57, 59.  The event's cost "exceeded the limit associated with Target's PCard and Recognition Policies, by a total of approximately $600.00." *Id.* ¶ 58.  In accordance with previous instructions from her superior, Plaintiff used personal funds to cover the balance and used a gift card to reimburse herself. *Id.* ¶ 59.

On March 28, 2019, Defendant conducted Plaintiff's 2018 annual performance review, and "gave Plaintiff a rating of 'Delivered Important Outcomes' and provided no negative comments regarding Plaintiff's performance of her job duties." *Id.* ¶¶ 63, 65.  The performance review did not mention "Plaintiff's use of Defendant's PCard, use of Recognition expenses, or reimbursement requests." *Id.* ¶ 66.

In May 2019, Plaintiff's superiors informed Plaintiff that her conduct regarding the event violated Defendant's written recognition policies. *Id.* ¶ 62.  Defendant told Plaintiff that she was terminated "because she violated the expense policy in December of 2018" but did not direct Plaintiff to a specific provision in Defendant's policies. *Id.* ¶¶ 68–69.  Plaintiff claims she did not receive "a fair investigative process" or "a fair chance to be heard." *Id.* ¶ 75.  Plaintiff further avers that Defendant has "a practice of not terminating its employees except for cause." *Id.* ¶ 79.

In addition to terminating Plaintiff, Defendant terminated one other employee for the same conduct: "Murphy, who was and is Plaintiff's significant other." *Id.* ¶ 76.  Plaintiff and Murphy were terminated on the same day. *Id.* ¶ 77.  Plaintiff alleges that

"she is unaware of any other similarly situated Target employee in the 'Group 296 Southern California Market,' aside from her boyfriend, who was reprimanded or terminated for engaging in the Reimbursement Practices described above, and which Plaintiff's superiors informally instructed to Plaintiff to follow." *Id.* ¶ 78.  Plaintiff claims that "the reasons given to Plaintiff to explain her termination were pretextual in nature, and not the true reason for Plaintiff's termination" and "[t]he true reason Defendant terminated Plaintiff was due to her relationship to Mr. Murphy, who was terminated for similar conduct."  *Id.* ¶¶ 83–84.  Defendant terminated Plaintiff without severance, and Plaintiff was denied unemployment benefits. *Id.* ¶¶ 85, 101.

Based on these allegations, Plaintiff brings seven causes of action against Defendant.  *See* Compl. ¶¶ 102–214.  Defendant moves to dismiss each cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) and strike Plaintiff's prayer for attorneys' fees pursuant to Federal Rule of Civil Procedure 12(f).  *See* Doc. No. 16.

## II. LEGAL STANDARD

**A. Motion to Dismiss for Failure to State A Claim**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the

nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

**B. Motion to Strike**

A Rule 12(f) motion to strike allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  For the purposes of this rule, "'[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5

6

Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 1527 (quoting 5 Charles A. Wright & Arthur R. Miller, at 711); *see also Whittlestone, Inc.*, 618 F.3d at 974. "In order to show that a defense is insufficient, 'the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *Diaz v. Alternative Recovery Mgmt.*, No. 12-cv-1742-MMA (BGS), 2013 WL 1942198, at *1 (S.D. Cal. May 8, 2013) (quoting *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995)).

The purpose of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally disfavored, unless 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Haghayeghi v. Guess?, Inc.*, No. 14-cv-00020 JAH-NLS, 2015 WL 1345302, at *5 (S.D. Cal. Mar. 24, 2015) (quoting *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)); *see also Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)). In ruling on a motion to strike, the court may only consider the face of the pleading or matters subject to judicial notice. *See Fantasy, Inc.*, 984 F.2d at 1528; *Sands*, 902 F. Supp. at 1165 (C.D. Cal. 1995). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Snap! Mobile, Inc. v. Croghan*, No. 18-cv-04686-LHK, 2019 WL 884177, at *3 (N.D. Cal. Feb. 22, 2019) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). Ultimately, the decision about whether to strike allegations is a matter within the Court's discretion. *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)

(citing *Fantasy, Inc.*, 984 F.2d at 1528); *see also Whittlestone, Inc.*, 618 F.3d at 974 (quoting *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)).

### III. DISCUSSION

**A. Motion to Dismiss for Failure to State A Claim**

Plaintiff asserts seven causes of action in her SAC: (1) breach of implied contract; (2) breach of implied covenant of good faith and fair dealing; (3) wrongful termination in violation of public policy; (4) wrongful termination in bad faith; (5) negligent supervision; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress. *See* SAC ¶¶ 102–214. The Court considers each claim in turn.

**1. Breach of Implied Contract**

Plaintiff's first cause of action is breach of implied contract. *See id.* ¶¶ 102–16. Defendant argues that Plaintiff's claim fails because she "cannot refute she was an at will employee and she has not identified a Target policy or practice to support her claim that an implied contract existed." Doc. No. 16-1 at 12; *see also* Doc. No. 22 at 3. Defendant asserts that an implied-in-fact contract claim cannot survive where the parties have a valid, express contract concerning the same subject matter. *See* Doc. No. 16-1 at 12. Plaintiff responds that implied-in-fact contract terms altered Plaintiff's at-will status and the Court should analyze the *Pugh* factors to determine the implied contract's terms. *See* Doc. No. 20 at 8–11.

A breach of contract claim under California law requires "(1) the existence of a contract[,] (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to plaintiff." *EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (citing *Reichert v. General Ins. Co.*, 442 P.2d 377, 381 (Cal. 1968)); *see also CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Ct. App. 2008). "A contract is either express or implied. . . . [A] contract implied in fact 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.'" *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *10 (N.D.

Cal. Dec. 5, 2013) (quoting *Retired Employees Assn. of Orange County, Inc. v. County of Orange*, 266 P.3d 287, 290 (Cal. 2011)); *see also Ctr. for Neuro Skills v. Blue Cross of California*, No. 1:13-cv-00743-LJO-JLT, 2013 WL 5670889, at *8 (E.D. Cal. Oct. 15, 2013) (quoting *Yari v. Producers Guild of Am., Inc.*, 73 Cal. Rptr. 3d 803, 811 (Cal. 2008)) ("A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct.").

The Labor Code provides that "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other." Cal. Lab. Code § 2922. "This presumption may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee." *Foley v. Interactive Data Corp.*, 765 P.2d 373, 376 (Cal. 1988); *see also Eisenberg v. Alameda Newspapers, Inc.*, 88 Cal. Rptr. 2d 802, 823 (Ct. App. 1999). However, "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *O'Connor*, 2013 WL 6354534, at *10 (quoting *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 51 Cal. Rptr. 2d 622, 628 (Ct. App. 1996)); *see also T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 873 (N.D. Cal. 2015) (finding that a plaintiff cannot succeed on breach of express and implied contract claims covering the same subject matter); *Eisenberg*, 88 Cal. Rptr. 2d at 824 ("A contract requiring termination only for cause will not be implied if there is an express writing providing to the contrary. There cannot be a valid express contract and an implied contract, each embracing the same subject, but compelling different results."); *Wal-Noon Corp. v. Hill*, 119 Cal. Rptr. 646, 650 (Ct. App. 1975) ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time.").

Plaintiff's claims rely on an implied contract existing between the parties. *See* SAC ¶¶ 1, 102–16. However, Defendant points to the existence of express, written employment documents to establish that Plaintiff was an at-will employee: (1)

"Plaintiff's Orientation Completion Form," (2) "Plaintiff's Employment Application," and (3) "Target Team Member Handbook."  Doc. No. 16-1 at 14; *see also* Doc. No. 16-5 at 2 (Plaintiff's Orientation Completion Form); Doc. No. 16-4 at 2–3 (Plaintiff's Employment Application); Doc. No. 16-6 at 2–7 (Target Team Member Handbook).  Plaintiff responds that she "does not dispute the existence of an express at-will employment contract."  Doc. No. 20 at 9.[3]  The Orientation Completion Form, signed by Plaintiff, states that "I understand that Target's policies and procedures are not a contract, that they do not alter my 'at-will' employment status, and that they may be changed from time to time while I am employed by Target."  Doc. No. 16-5 at 2.  The Employment Application, which contains Plaintiff's typed signature and date, states the following:

> All of our team members are "at will" team members, which means that team members can terminate the employment relationship at any time, for any or no reason.  Target reserves the right to change and/or terminate a team member's employment, compensation and benefits, with or without notice or cause at any time.  Target will not, and team members and applicants should not, interpret any verbal or written statements, policies, practices, or procedures as altering their "at will" status.  "At will" status can only be altered with the advance written approval from the Executive Vice President of Human Resources or his/her designate.

Doc. No. 16-4 at 3.  The Target Team Member Handbook provides the following:

> All Target team members are employed "at-will," which means Target can terminate the employment relationship at any time, for any reason not

---

[3] Plaintiff also does not object to the Court's consideration of these three documents.  The Court finds that it may consider the documents under the incorporation-by-reference doctrine because these employment-related documents form the basis of Plaintiff's employment action and the nature of the alleged contract.  *See Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (quoting *Ritchie*, 342 F.3d at 908); *see also id.* (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)) ("The Ninth Circuit has noted that there is a 'policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based.'").

1
2
3
4
5
6

> prohibited by law.  Team members have the same right.  Therefore, except for the policy of at-will employment, Target's policies, practices or procedures, including this handbook, do not constitute a contract, expressed or implied.  Target will not, and team members should not, interpret any verbal or written statement, policies, practices or procedures, including this handbook, as altering their at-will status.  In addition, Target practices or procedures do not guarantee employment for any particular length of time or limit how that employment may end.

7

8 Doc. No. 16-6 at 7.

9       These three documents and Plaintiff's concession indicate that Plaintiff had an

10 express at-will relationship with Defendant.  However, Plaintiff argues that implied terms

11 altered the original at-will agreement.  *See* Doc. No. 20 at 9.  Specifically, Plaintiff

12 alleges that "Defendant maintains a practice of not terminating its employees except for

13 cause," and its practice "is evidenced by Defendant's use of full and fair investigations

14 into employees who are alleged to have violated company policy."  SAC ¶¶ 79, 80.

15 Plaintiff encourages the Court to use the *Pugh* factors to determine the implied contract

16 terms.  *See* Doc. No. 20 at 10–11 (citing *Pugh v. See's Candies, Inc.*, 171 Cal. Rptr. 917,

17 925–26 (Ct. App. 1981)).

18       The Court finds Plaintiff's argument unavailing.  Plaintiff's reliance on the *Pugh*

19 factors is misplaced because "where there is an express contract that insists on the

20 employee's at will status, the *Pugh* factors have no relevance."  *Ferdinando v. Intrexon*

21 *Corp.*, No. 16-cv-01826-BTM-JMA, 2016 WL 6947060, at *3 (S.D. Cal. Nov. 28, 2016);

22 *see also Halvorsen v. Aramark Unif. Servs., Inc.*, 77 Cal. Rptr. 2d 383, 385 (Ct. App.

23 1998) (quoting *Camp v. Jeffer, Mangels, Butler & Marmaro*, 41 Cal. Rptr. 2d 329, 334

24 (1995)).  Plaintiff cannot sustain her breach of implied contract claim where a valid,

25 express contract exists between the parties and both cover the same subject matter of

26 whether Plaintiff was an at-will employee of Defendant.  *See Ferdinando*, 2016 WL

27 6947060, at *3 ("Given the express contractual provisions, Plaintiff's claim of an implied

28 contract for continued employment cannot rebut her status as an at-will employee.");

*Halvorsen*, 77 Cal. Rptr. 2d at 385 (quoting *Camp*, 41 Cal. Rptr. 2d at 334) ("Thus, the [employees'] express at-will agreement precluded the existence of an implied contract requiring good cause for termination."); *see also T & M Solar & Air Conditioning, Inc.*, 83 F. Supp. 3d at 873; *O'Connor*, 2013 WL 6354534, at *10 (quoting *Lance Camper Mfg. Corp.*, 51 Cal. Rptr. 2d at 628); *Eisenberg*, 88 Cal. Rptr. 2d at 824; *Wal-Noon Corp.*, 119 Cal. Rptr. at 650.

As Plaintiff concedes, she formed an express at-will employment relationship with Defendant. *See* Doc. No. 16-4 at 3; Doc. No.16-5 at 2; Doc. No. 16-6 at 7; Doc. No. 20 at 9. If the Court were to find an implied-in-fact contract, the subject matter of the implied contract would directly conflict the written agreements. Therefore, given the express contractual provisions, Plaintiff's implied-in-fact contract for good cause termination cannot rebut her at-will employment status. *See Ferdinando*, 2016 WL 6947060, at *3; *see also Halvorsen*, 77 Cal. Rptr. 2d at 386 ("Accordingly, [the employee's] employment was at-will under the terms of the contract and an implied-in-fact promise not to terminate except for good cause cannot contradict the contractual at-will provision.").[4]

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's breach of implied contract claim **without leave to amend**. *See Ferdinando*, 2016 WL 6947060, at *3.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second cause of action is breach of implied covenant of good faith and fair dealing. *See* SAC ¶¶ 117–47. Defendant argues that Plaintiff's claim fails because there is no valid breach of implied contract claim. *See* Doc. No. 16-1 at 16; *see also* Doc. No. 22 at 3–4. Plaintiff responds that she overcomes the at-will employment

---

[4] Furthermore, Plaintiff does not allege or argue that there was a modification to Plaintiff's express employment contract. *See Ferdinando*, 2016 WL 6947060, at *3 n.4; *see also Halvorsen*, 77 Cal. Rptr. 2d at 385–86.

presumption and her claim is "separate and apart from her breach of contract claim because it arises out of an independent tortious conduct." Doc. No. 20 at 13.

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat. Inc.*, 8 P.3d 1089, 1110 (Cal. 2000). "The covenant thus cannot 'be endowed with an existence independent of its contractual underpinnings.'" *Id.* (quoting *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 639 (Cal. 1995)). "It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.*

Here, Plaintiff alleges that Defendant terminated Plaintiff without directing her "to any specific provision in Target's policies that Plaintiff violated" and "without conducting a thorough and fair investigative process." SAC ¶¶ 123, 127. Plaintiff claims the reason for her termination was "pretextual in nature" and was terminated because of her relationship with Murphy. SAC ¶¶ 130, 132. However, "where breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous" and "where an implied covenant claim alleges a breach of obligations beyond the agreement's actual terms, it is invalid" *Guz*, 8 P.3d at 1095; *see also id.* at 1112. Thus, Plaintiff's breach of implied covenant of good faith and fair dealing claim fails—to the extent that she brings the claim based on her termination without good cause—because of her valid at-will employment agreement. *See Ferdinando*, 2016 WL 6947060, at *4 ("As stated by the California Supreme Court, Plaintiff cannot logically base her claim on the deprivation of continued employment because the at-will status of her employment guarantees no such benefit."); *Guz*, 8 P.3d at 1112 ("To the extent [employee's] implied covenant cause of action seeks to impose limits on [employer's] termination rights *beyond* those to which the parties actually agreed, the claim is invalid. To the extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is superfluous."). Plaintiff's attempt to create a requirement for good

cause termination by invoking the implied covenant of good faith and fair dealing "is futile because the covenant of good faith and fair dealing 'cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract.'" *Halvorsen*, 77 Cal. Rptr. 2d at 386 (quoting *Tollefson v. Roman Catholic Bishop*, 268 Cal. Rptr. 550, 556 (Ct. App. 1990), *disapproved on other grounds in Scott v. Pac. Gas & Elec. Co.*, 904 P.2d 834, 846 n.5 (Cal. 1995), *as recognized in Halvorsen*, 77 Cal. Rptr. 2d at 386).

Plaintiff's argument that her claim survives because it originates from an independent tortious act is unavailing. The California Supreme Court has explained that "the remedy for breach of an employment agreement, including the covenant of good faith and fair dealing implied by law therein, is solely contractual. In the employment context, an implied covenant theory affords no separate measure of recovery, such as tort damages." *Guz*, 8 P.3d at 1112 (citing *Foley*, 765 P.2d at 389–01). Plaintiff quotes *Koehrer v. Superior Court* for the proposition that a plaintiff may have a claim for breach of implied covenant of good faith and fair dealing based on tort. *See* Doc. No. 20 at 12 (quoting 226 Cal. Rptr. 820, 829 (Ct. App. 1986)). However, *Foley* disapproved of *Koehrer*. *See Foley*, 765 P.2d at 393, 395, 400–01 ("[W]e are not convinced that a 'special relationship' analogous to that between insurer and insured should be deemed to exist in the usual employment relationship which would warrant recognition of a tort action for breach of the implied covenant."). The remedy for breach of implied covenant of good faith and fair dealing is limited to contract damages and does not include recovery for tort damages. *See Guz*, 8 P.3d at 1112; *Foley Corp.*, 765 P.2d at 389–01; *Ferdinando*, 2016 WL 6947060, at *7. Therefore, because Plaintiff argues that her implied covenant of good faith and fair dealing claim "arises out of an independent tortious conduct," Doc. No. 20 at 13, and the California Supreme Court has limited such claim as "solely contractual," *Guz*, 8 P.3d at 1112 (emphasis omitted), the Court finds that Plaintiff's claim fails.

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's breach of implied covenant of good faith and fair dealing claim **without leave to amend**. *See Ferdinando*, 2016 WL 6947060, at *7.

### 3. Wrongful Termination in Violation of Public Policy

Plaintiff's third cause of action is wrongful termination in violation of public policy. *See* SAC ¶¶ 148–65. Defendant argues that Plaintiff's claim fails because "Plaintiff has not identified a policy that would support her claim for wrongful termination." Doc. No. 16-1 at 18; *see also* Doc No. 22 at 4–5. Plaintiff responds that she alleges Defendant violated her right to privacy under the California Constitution when it terminated her. *See* Doc. No. 20 at 15, 17.

Although the California Labor Code presumes at-will employment, *see Foley*, 765 P.2d at 376 (quoting Cal. Lab. Code § 2922), the presumption is not unfettered: "the employer's right to discharge an 'at will' employee is still subject to limits imposed by public policy." *Id.* at 376. "The California Supreme Court has emphasized that a tort action alleging a breach of public policy must implicate a fundamental public policy concern." *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1140 (S.D. Cal. 2018) (citing *Foley*, 765 P.2d at 379); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 758 (9th Cir. 2003); *Tameny v. Atl. Richfield Co.*, 610 P.2d 1330, 1336–337 (Cal. 1980). To succeed on a tort claim for wrongful termination in violation of public policy, a plaintiff must prove the following elements: "(1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination or adverse action was a violation of public policy; (4) the termination or adverse action was a legal cause of plaintiff's damages; and (5) the nature and extent of the damages." *McCarthy v. R.J. Reynolds Tobacco Co.*, 819 F. Supp. 2d 923, 937 (E.D. Cal. 2011) (citing *Holmes v. Gen. Dynamics Corp.*, 22 Cal. Rptr. 2d 172, 177 n.8 (Ct. App. 1993)); *see also Gilliland v. Safeway Inc.*, No. 2:08-cv-01134-MCE-CMK, 2008 WL 11267817, at *4 (E.D. Cal. Oct. 10, 2008) (same); Jud. Council of Cal. Civ. Jury Instns. (2004) 2430, CACI No. 2430. "[T]he public policy must be '(1) delineated in either constitutional or statutory

provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual; (3) well established at the time of discharge; and (4) substantial and fundamental.'" *Freund*, 347 F.3d at 758 (citing *City of Moorpark v. Superior Court*, 959 P.2d 752, 762 (Cal. 1998)).

Here, Plaintiff alleges an employer-employee relationship between her and Defendant. *See* SAC ¶¶ 13–14. Plaintiff also alleges that Defendant terminated her. *See* ¶¶ 67–84. However, whether Plaintiff pleads Defendant violated public policy when it terminated her requires further analysis.

The California Constitution provides that privacy is an inalienable right. *See* Cal. Const. art. I, § 1. California's right to privacy "protects individuals from the invasion of their privacy by private parties." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1021 (N.D. Cal. 2012) (citing *Am. Acad. of Pediatrics v. Lungren*, 940 P.2d 797, 810 (Cal. 1997)). The California Court of Appeal has held that the right to privacy is fundamental. *Semore v. Pool*, 266 Cal. Rptr. 280, 286 (Ct. App. 1990) (citing *Rulon-Miller v. Int'l Bus. Machines Corp.*, 208 Cal. Rptr. 524, 534 (Ct. App. 1984), *disapproved of other grounds by Guz*, 8 P.3d 1089, 1110–11); *see also Grinzi v. San Diego Hospice Corp.*, 14 Cal. Rptr. 3d 893, 899 (Ct. App. 2004) (quoting *Semore*, 266 Cal. Rptr. at 286). "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." *Barbee v. Household Auto. Fin. Corp.*, 6 Cal. Rptr. 3d 406, 410 (Ct. App. 2003) (quoting *Hill v. Nat'l Collegiate Athletic Assn.*, 865 P.2d 633, 657 (Cal. 1994)).

A legally protected privacy interest generally falls into two classes of privacy interests: "informational privacy" and "autonomy privacy." *Hill*, 865 P.2d at 654. Autonomy privacy is defined as "interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference." *Id.* "Whether a legally recognized privacy interest is present in a given case is a question of

law to be decided by the court." *Id.* at 657.  Here, the Court finds that Plaintiff has a legally protected privacy interest in pursuing an intimate or sexual relationship.  *See Barbee*, 6 Cal. Rptr. 3d at 410 (finding that an employee manager "may have a legally protected privacy interest in pursuing an intimate or sexual relationship, guaranteed by article I, section 1 of the California Constitution" but ultimately finding that the court need not resolve this issue because the employee could not establish the reasonable expectation of privacy element as to a relationship with a subordinate); *cf. Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (quoting *Bowers v. Hardwick*, 478 U.S. 186, 216, (1986) (Stevens, J., dissenting)) ("[I]ndividual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. Moreover, this protection extends to intimate choices by unmarried as well as married persons."); *Barbee*, 6 Cal. Rptr. 3d at 410–11 (quoting *Warfield v. Peninsula Golf & Country Club*, 896 P.2d 776, 798 (Cal. 1995)) ("The 'state constitutional right [to privacy] provides protection that is distinct from, and in some respects greater than, that provided by the federal Constitution.'").  In the section of her SAC pertaining to wrongful termination in violation of public policy, Plaintiff alleges "[t]he California Constitution provides for a right to privacy" and subsequently quotes from the California Constitution.  SAC ¶ 159 (quoting Cal. Const. art. I, § 1).  Plaintiff further alleges that "[she] was terminated due to her relationship with Mr. Murphy, who was terminated for similar conduct."  *Id.* ¶ 161.  Plaintiff claims that Defendant provided her with pretextual reasons for her termination.  *See id.* ¶ 158.  Assuming the truth of Plaintiff's allegations and construing them in the light most favorable to her, *see Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340), the Court finds Plaintiff plausibly pleads a viable privacy interest.

A reasonable expectation of privacy is dependent on the circumstances.  *See Hill*, 865 P.2d at 655.  Several inquiries may shed light on whether an expectation of privacy is reasonable: whether there is advanced notice of an impending action that would limit an

17

otherwise serious intrusion, and whether "customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." *Id.* "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Id.* "Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact." *Id.* at 657. Unlike the facts in *Barbee,* 6 Cal. Rptr. at 411–12 (finding that there was no reasonable expectation of privacy where a manager plaintiff was terminated for having a relationship with a subordinate), Plaintiff here does not directly allege whether she and Murphy worked under or with one another or, if they did, in what capacity. However, Plaintiff does allege that they "did not work at the same Target store" and their relationship took place "occurring during nonworking hours away from Defendant's premises." SAC ¶¶ 175, 176. Viewing Plaintiff's allegations in her favor, Court finds that Plaintiff has pleaded sufficient facts to state a plausible reasonable expectation of privacy to survive a motion to dismiss.

"Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy." *Hill*, 865 P.2d at 655. Plaintiff alleges that Defendant purportedly terminated her for violation of Defendant's Reimbursement Practice. *See* SAC ¶¶ 62, 68, 150, 154. Plaintiff alleges that the basis for her termination was pretextual and she was, instead, terminated for her relationship with Murphy. *See id.* ¶¶ 158, 161. To bolster her claim of pretextual termination, Plaintiff alleges that "Defendant knew or had reason to know that the Reimbursement Practice was a widely used practice within Southern California Target stores" and used by employees "regularly without repercussion." *Id.* ¶¶ 151, 157. Plaintiff claims that Defendant was not truthful when it stated that "its system flagged only Plaintiff and . . . Murphy as having used the Reimbursement Practice." *Id.* ¶ 156.

Despite Defendant knowing about other employees using the Reimbursement Practice, Plaintiff alleges that only she and Murphy were terminated for participating in the Reimbursement Practice. *See id.* ¶¶ 151–153, 161. The Court finds that Plaintiff has pleaded sufficient facts to demonstrate a plausible serious invasion of privacy to defeat a motion to dismiss.

Defendant challenges an inconsistency in Plaintiff's allegations. *See* Doc. No. 16-1 at 18; Doc. No. 22 at 5. Defendant takes issue with Plaintiff pleading both "Plaintiff's employment with Defendant came to an abrupt end *as a result of her participation in the Reimbursement Practice*," SAC ¶¶ 120, 150, 168 (emphasis added), and "Plaintiff was terminated *due to her relationship with . . . Murphy*, who was terminated for similar conduct," *id.* ¶¶ 84, 112, 131, 161, 174 (emphasis added). Read literally in isolation, these statements could be interpreted as inconsistent. However, read against the whole of the SAC, the Court finds that although Plaintiff alleges her termination *purportedly* was due to her participation in the Reimbursement Practice, Plaintiff alleges her termination was *actually* due to her relationship with Murphy. *Compare* SAC ¶ 68, *with id.* ¶¶ 83–84. Whether Plaintiff can prove her termination was sufficiently caused by Defendant's infringement of her right to privacy is a better question for a motion for summary judgment or trial.

Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's wrongful termination in violation of public policy claim.

### 4. Wrongful Termination in Bad Faith

Plaintiff's fourth cause of action is wrongful termination in bad faith. *See* SAC ¶¶ 166–80. Plaintiff appears to ground her claim in California Labor Code § 96(k). *See id.* ¶¶ 167, 177. Defendant argues that § 96(k) "cannot serve as the basis for her wrongful termination in violation of public policy claim." Doc. No. 16-1 at 19; *see also* Doc. No. 22 at 5–6. Even if Plaintiff could rely upon § 96(k), Defendant further asserts that Plaintiff has not exhausted her administrative remedies. *See* Doc. No. 16-1 at 20. Plaintiff responds that her wrongful termination claim in violation of § 96(k) should not

be dismissed because Defendant violated her right to privacy under the California Constitution.  *See* Doc. No. 20 at 14, 15.

To the extent that Plaintiff argues that California Labor Code § 96(k) bolsters her wrongful termination claim, her argument fails.  *See* SAC ¶¶ 167, 177; Doc. No. 20 at 14, 16.  Section 96(k) "does not set forth an independent public policy that provides employees with any substantive rights, but rather, merely establishes a procedure by which the Labor Commissioner may assert, on behalf of employees, recognized constitutional rights."  *Grinzi*, 14 Cal. Rptr. 3d at 901 (quoting *Barbee*, 6 Cal. Rptr. 3d at 412).  Thus, § 96(k) "does not create any support for this claim of wrongful termination in violation of public policy."  *Id.*  Because § 96(k) merely provides "a procedure" for the Labor Commissioner to assert recognized rights and does not set forth its own "independent public policy," *id.*, Plaintiff cannot state a claim for wrongful termination premised on violation of § 96(k).

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's wrongful termination in bad faith claim premised on California Labor Code § 96(k) **without leave to amend**.[5]

### 5. Negligent Supervision

Plaintiff's fifth cause of action is negligent supervision.  *See* SAC ¶¶ 181–01.  Defendant argues that Plaintiff's claim fails because it is "barred by the California Workers' Compensation Act" ("Compensation Act"), Plaintiff is limited to a contractual remedy, and Plaintiff neglects "to plead sufficient facts."  Doc. No. 16-1 at 21, 22; *see also* Doc. No. 22 at 6–7.  Plaintiff responds that the Compensation Act does not cover Plaintiff's emotional distress claim.  *See* Doc. No. 20 at 17.  Plaintiff asserts that "there is

---

[5] To the extent Plaintiff seeks to bring a civil action for violation of § 96(k), Plaintiff does not allege that she exhausted her administrative remedies under the Labor Code and fails to respond to this oversight raised by Defendant.  *See Brahmana v. Lembo*, No. C-09-00106 RMW, 2010 WL 965296, at *4–5 (N.D. Cal. Mar. 17, 2010); *see also* Cal. Lab. Code §§ 2699(a), 2699.3, 2699.5.

no relation between Plaintiff's injury alleged under the negligent supervision claim and the kind of personal injuries covered by the [Compensation Act]." *Id.* at 18.

"To state a claim for negligent supervision, a plaintiff must allege: (1) the existence of a legal duty of the employer to employee to use due care; (2) how the employer breached that duty; (3) how any breach proximately caused plaintiff's damages; and (4) damages." *Horn v. Azusa Pac. Univ.*, No. 2:18-cv-09948-CAS-PLAx, 2019 WL 9044606, at *11 (C.D. Cal. Jan. 14, 2019) (citing *Greenfield v. Am. W. Airlines, Inc.*, No. C03-05183 MHP, 2004 WL 2600135, at *6 (N.D. Cal. Nov. 16, 2004)).  However, "[s]ubject to limited exceptions, workers' compensation is the only remedy available to injured employees against an employer responsible for injuries 'arising out of and in the course of [the] employment.'" *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1152 (S.D. Cal. 2007) (citing Cal. Lab. Code § 3600, 3601(a), 3602(a)); *see also Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 14 P.3d 234, 245 (Cal. 2001) ("Together, these provisions establish that the liability of employers and insurers for 'industrial injury which results in occupational disability or death' is limited to workers' compensation remedies.").

Regardless of whether Plaintiff's claim falls within the Compensation Act's exclusivity provisions, Plaintiff attempts to transform a contractual wrongful termination action into a tort claim.  Plaintiff alleges that "Defendant had a duty to act as a reasonably prudent employer, ensuring its employees and managers companywide were trained to operate in accordance with the company's PCard and Recognition Policies."  SAC ¶ 198. Plaintiff claims that Defendant breached this duty "by negligently supervising Plaintiff's superiors, which ultimately caused Plaintiff to suffer termination and subsequent harm." *Id.* ¶ 199.  Plaintiff cites no authority to show that Defendant owed an independent duty to train her according to the company's PCard and Recognition Policies.  *See Richardson v. Reliance Nat. Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *13 (N.D. Cal. Mar. 9, 2000) (dismissing a plaintiff's negligence claim that defendants breached their

duty by voting to terminate the plaintiff without a quorum).  In essence, Plaintiff argues poor supervision regarding the correct policies led to her termination.

> During that often lengthy series of precursor events [leading up to termination], it can frequently be alleged that the employer acted unreasonably or "should have" done something different.  Such allegations do not establish a tort of negligence independent of the discharge itself.  As long as the alleged injury would not have occurred but for the employment termination, *Foley* indicates that the employee is generally limited to a contractual remedy.
>
> *Foley*'s decision to limit remedies envisions that an employee may recover *contractual* damages for a wrongful termination.

*Hine v. Dittrich*, 278 Cal. Rptr. 330, 334 (Ct. App. 1991) (citing *Foley*, 765 P.2d 373) (affirming a grant of summary judgment against a plaintiff's negligent supervision claim that his former employer had a duty to provide for employees' welfare while they worked, knew or should have known that another employee was harassing plaintiff and other employees, and failed to prevent the harassment).  "According to the [*Foley*] court, tort damages are only proper where the discharge 'affects a duty which inures to the benefit of the public at large rather than to a particular employer or employee.'" *Id.* at 333 n.3 (quoting *Foley*, 765 P.2d at 379).

Similar to the plaintiffs in *Hine* and *Richardson*, Plaintiff unsuccessfully attempts to convert a contractual termination claim into a negligence claim.  Plaintiff's claim rests on Defendant's failure to train in accordance with official company policies.  *See* SAC ¶ 198.  The alleged injury would not have occurred but for her termination.  *See id.* ¶¶ 199–00.  Moreover, the facts underlying Plaintiff's negligent supervision claim do not point to a broader public policy that would permit a tort remedy.  Because Plaintiff's injury would not have occurred but for her termination and does not implicate a substantial public policy, she is limited to a contract remedy.

22

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's negligent supervision claim **without leave to amend**.  *See Richardson*, 2000 WL 284211, at *13.

### 6. Intentional Infliction of Emotional Distress

Plaintiff's sixth cause of action is intentional infliction of emotional distress.  *See* SAC ¶¶ 202–08.  Defendant argues that Plaintiff's claim fails because she does not allege extreme and outrageous conduct and the claim is barred by the Compensation Act.  *See* Doc. No. 16-1 at 23–25; *see also* Doc. No. 22 at 6–7.  Plaintiff responds that her termination in violation of public policy and her right to privacy was extreme and outrageous.  *See* Doc. No. 20 at 21.  Plaintiff further argues that her claim is not barred by the Compensation Act's exclusivity provision because "emotional distress is not [a] 'compensable injury' which either stems from a physical injury or results in disability" and because her termination violated public policy.  *Id.* at 22.

Under California law,

> [a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff[s] suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Evans v. City of San Diego*, 913 F. Supp. 2d 986, 1000 (S.D. Cal. 2012) (quoting *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009)); *see also Christensen v. Superior Court*, 820 P.2d 181, 202 (Cal. 1991).  "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Hughes*, 209 P.3d at 976 (quoting *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993)).  "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"  *Id.* (quoting *Potter*, 863 P.2d at 821).

As noted above, "[s]ubject to limited exceptions, workers' compensation is the only remedy available to injured employees against an employer responsible for injuries 'arising out of and in the course of [the] employment.'" *Stiefel*, 497 F. Supp. 2d at 1152 (citing Cal. Lab. Code § 3600, 3601(a), 3602(a)). "Where 'the essence of the wrong is personal physical injury or death, the action is barred by the exclusiveness clause no matter what its name or technical form if the usual conditions of coverage are satisfied.'" *Charles J. Vacanti, M.D., Inc.*, 14 P.3d at 245 (quoting *Cole v. Fair Oaks Fire Prot. Dist.*, 729 P.2d 743, 750 (Cal. 1987)). Thus, a compensable injury triggers workers' compensation exclusivity. *Id.* "An injury is compensable for exclusivity purposes if two conditions exist. First, the statutory conditions of compensation must concur." *Id.* That is, "if the injury arises 'out of and in the course of the employment, the exclusive remedy provisions apply notwithstanding that the injury resulted from . . . intentional conduct . . . even though the . . . conduct might be characterized as egregious.'" *Id.* (quoting *Shoemaker v. Myers*, 801 P.2d 1054, 1062 (Cal. 1990)). "Second, the injury must cause a 'disability or the need for medical treatment.'" *Id.* (quoting *Gomez v. Acquistapace*, 57 Cal. Rptr. 2d 821, 826 (Ct. App. 1996)).

Here, Plaintiff pleads that she "began suffering from symptoms of severe emotional distress including, but not limited to, stress, anxiety, and panic" as well as "mental pain and anguish" and "depression and anxiety." SAC ¶¶ 205, 207, 214. Plaintiff argues that the Compensation Act's exclusivity provision only preempts claims involving "personal physical injury sustained in the workplace or mental trauma arising out of physical injury or leading to disability." Doc. No. 20 at 22. Plaintiff is incorrect. "[C]laims for intentional or negligent infliction of emotional distress are preempted by the exclusivity provisions of the workers' compensation law, *notwithstanding the absence of any compensable physical disability*." *Livitsanos v. Superior Court*, 828 P.2d 1195, 1197 (Cal. 1992) (emphasis added); *see also id.* at 1199–02 (detailing the supporting statutory and case law rationale for holding that an employee's emotional distress injuries are included within the Compensation Act's exclusivity provisions). In

sum, "compensable injuries may be physical, emotional or both, so long as they are disabling." *Id.* at 1201. Therefore, the Court finds that Plaintiff plausibly pleads a compensable injury falling within the Compensation Act's exclusivity provisions.

Additionally, Plaintiff pleads that her injury—caused by Defendant's "extreme and outrageous" conduct in violation of public policy—arose out of her termination. *See* SAC ¶¶ 204, 206–07. Plaintiff argues that her emotional distress claim can survive because her wrongful termination violated public policy. *See* Doc. No. 20 at 22. Her argument is unavailing. In *Livitsanos*, the California Supreme Court held that "[s]o long as the basic conditions of compensation are otherwise satisfied (Lab.Code, § 3600), and the employer's conduct neither contravenes fundamental public policy, nor exceeds the risks inherent in the employment relationship, an employee's emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." 828 P.2d at 1202 (citations omitted) (first citing *Tameny*, 610 P.2d 1330; and then citing *Cole*, 729 P.2d 743). However, the California Supreme Court subsequently clarified the public policy exception: "[t]he exception for conduct that 'contravenes fundamental public policy' is aimed at permitting a *Tameny* action to proceed despite the workers' compensation exclusive remedy rule." *Miklosy v. Regents of Univ. of California*, 188 P.3d 629, 646 (Cal. 2008); *see also Yau v. Santa Margarita Ford, Inc.*, 176 Cal. Rptr. 3d 824, 837 (Ct. App. 2014) (ruling against a plaintiff who argued that a claim for intentional infliction of emotional distress premised on conduct violating a fundamental public policy is an exception to the general preemption rule). Moreover, "[a]n employer's intentional misconduct in connection with actions that are a normal part of the employment relationship . . . resulting in emotional injury is considered to be encompassed within the compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'" *Yau*, 176 Cal. Rptr. 3d at 837 (quoting *Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*, 166 Cal. Rptr. 3d 242, 252 (Ct. App. 2013)).

Here, Plaintiff pleads a plausible wrongful termination claim. *See supra* Section III.A.3. However, her intentional infliction of emotional distress claim is barred by the Compensation Act's exclusivity provision because her claim arose out of her termination, "a normal and inherent part of employment," even if Plaintiff's termination involved unfair, outrageous, harassing, or intentionally emotionally disturbing conduct by Defendant. *Thibeaux v. GEO Grp., Inc.*, No. 13-cv-291-BEN (MDD), 2014 WL 6693782, at *3 (S.D. Cal. Nov. 25, 2014) (granting a defendant's motion for summary judgment as a matter of law against plaintiff's intentional infliction of emotional distress claim); *see also Shoemaker*, 801 P.2d at 1065, 1069.

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's intentional infliction of emotional distress claim **without leave to amend**.

### 7. Negligent Infliction of Emotional Distress

Plaintiff's seventh cause of action is negligent infliction of emotional distress. *See* SAC ¶¶ 209–214. Defendant argues that Plaintiff's claim fails because it is preempted by the Compensation Act, she fails to allege negligent conduct, and negligent infliction of emotional distress is not an independent tort. *See* Doc. No. 16-1 at 26; *see also* Doc. No. 22 at 21–22. Plaintiff again responds that her claim is not barred by the Compensation Act's exclusivity provision. *See* Doc. No. 20 at 22. Plaintiff further asserts that "Defendant's intentional decision to terminate Plaintiff from her employment stemmed from a different reason than not following proper reimbursement procedure." *Id.* at 23.

Under California law, "there is no independent tort of negligent infliction of emotional distress." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 961 (9th Cir. 2013) (quoting *Potter*, 863 P.2d at 808). Rather, the cause of action is "derived from the tort of negligence." *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1192 (S.D. Cal. 2010) (citing *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 770 P.2d 278, 281 (Cal. 1989)). Thus, a plaintiff must establish the elements of negligence—duty, breach, causation, and damages—to survive a motion to dismiss. *Id.* (citing *Marlene F.*, 770 P.2d at 281); *see also Burgess v. Superior Court*, 831 P.2d 1197, 1200 (Cal. 1992).

> [U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty.

*Gangland Prods., Inc.*, 730 F.3d at 961 (quoting *Potter*, 863 P.2d at 808–09).  A plaintiff may only recover damages for "serious emotional distress," such that a "reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case."  *Steel*, 726 F. Supp. 2d at 1193 (quoting *Molien v. Kaiser Found. Hosps.*, 616 P.2d 813, 819–20 (Cal. 1980)).

Plaintiff alleges that "[she] was not provided with the necessary instrumentalities to adequately perform her job duties; Defendant abused its position of authority toward Plaintiff; and Defendant breached a duty owed to Plaintiff to provide Plaintiff a workplace free of harassment, unfair treatment, and retaliation."  SAC ¶ 211.  In opposition to Defendant's motion, Plaintiff argues that "Defendant's [negligent infliction of emotional distress] claim is grounded in Target's negligent supervision and not her termination."  Doc. No. 20 at 23.

Plaintiff's negligent infliction of emotional distress claim fails to the extent that she alleges a duty similar to her unsuccessful negligent supervision claim.  *See supra* Section III.A.5; *see also Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 756 (Ct. App. 1996) ("Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society.  A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.").  Further, to the extent Plaintiff alleges Defendant's "harassment" and "retaliation" breached a duty owed to Plaintiff, she does not plead sufficient facts to show how Defendant harassed or retaliated against her.  Although her allegations state a claim for

1  wrongful termination, that claim centers on Defendant's violation of her right to privacy

2  because of her relationship with Murphy, not on harassment or retaliation.

3        However, unlike her negligent supervision claim, Plaintiff here also seemingly

4  appears to allege a duty based on the facts surrounding her wrongful termination claim.

5  *Compare* SAC ¶ 198 ("Defendant had a duty to act as a reasonably prudent employer,

6  ensuring its employees and managers companywide were trained to operate in

7  accordance with the company's PCard and Recognition Policies"), *with* ¶ 211

8  ("Defendant breached a duty owed to Plaintiff to provide Plaintiff a workplace free of . . .

9  unfair treatment . . . ."). On this basis, Plaintiff's negligent infliction of emotional

10 distress claim fails for the same reasons her intentional infliction of emotional distress

11 fails. *See supra* Section III.A.6.

12       Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's

13 negligent infliction of emotional distress claim **without leave to amend**.

14 **B. Motion to Strike**

15       Defendant further moves to strike Plaintiff's request for attorneys' fees. *See* Doc.

16 No. 16-1 at 27–28; *see also* Doc. No. 22 at 7–9. Defendant argues that Plaintiff's claims

17 do not permit attorneys' fees because her wrongful termination and contract claims are

18 limited to contract damages and Plaintiff fails to identify a contractual provision that

19 would create an entitlement to attorneys' fees. *See* Doc. No. 16-1 at 28. Defendant

20 further notes that Plaintiff does not identify a statutory basis for attorneys' fees for her

21 emotional distress tort claims. *See id.* Plaintiff responds that California Code of Civil

22 Procedure §§ 1032 and 1021.5 provide for an attorneys' fee award for wrongful

23 termination in violation of public policy. *See* Doc. No. 18 at 4. Plaintiff further contends

24 that Defendant's motion is not yet ripe at this stage of the litigation and Defendant does

25 not show how it will be prejudiced by retaining the attorneys' fees prayer. *See id.* at 5–6.

26       Defendant's motion to strike is an attempt to have certain portions of the SAC

27 dismissed—"actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a

28 Rule 12(f) motion." *Whittlestone, Inc.*, 618 F.3d at 974. "Rule 12(f) does not authorize

district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Id.* at 974–75 (remanding an action to the district court, which originally granted the defendant's motion to strike portions of the complaint that sought lost profits and consequential damages). District courts have followed the same approach for motions to strike claims for attorneys' fees. *See, e.g.*, *Steines v. Crown Media United States, LLC*, No. CV 18-09293-CJC (FFMx), 2018 WL 6330600, at *9 (C.D. Cal. Dec. 4, 2018) (declining to strike allegations that Plaintiff was entitled to attorneys' fees under California Code of Civil Procedure § 1021.5); *J & J Sports Prods., Inc. v. Nguyen*, No. 13-CV-02008-LHK, 2014 WL 60014, at *9 (N.D. Cal. Jan. 7, 2014) (same); *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1029 (N.D. Cal. 2012) (same).

Furthermore, the court finds that the motion to strike does not meet the standard stated in Rule 12(f). First, the request for attorneys' fees is not an insufficient defense; rather, it is a desired form of relief in the SAC. *See Whittlestone, Inc.*, 618 F.3d at 974 (concluding that a claim for damages is not an insufficient defense). Second, the request is not redundant because it does not appear elsewhere in the SAC. *See id.* Third, the request is not immaterial because the request directly relates to Plaintiff's supporting claim for relief. *See id.* Fourth, the request is not impertinent because whether the attorneys' fees are recoverable pertains directly to Plaintiff's underlying allegations. *See id.* Fifth, a request for attorneys' fees is not scandalous, and Defendant has not argued that it is scandalous. *See id.* Therefore, Defendant fails to meet its burden under Rule 12(f) to show that Plaintiff's prayer for attorneys' fees should be stricken from the SAC.

Accordingly, the Court **DENIES** Defendant's motion to strike Plaintiff's request for attorneys' fees. *See Ferretti*, 855 F. Supp. 2d at 1029.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss and **DENIES** Defendant's motion to strike. The Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's breach of implied contract, breach of implied covenant of good faith and fair dealing, wrongful termination in bad

faith, negligent supervision, intentional infliction of emotional distress, and negligent infliction of emotional distress claims **without leave to amend**.  The Court **DENIES** Defendant's motion to dismiss Plaintiff's wrongful termination in violation of public policy claim.

     **IT IS SO ORDERED**.

Dated: September 19, 2020

 

HON. MICHAEL M. ANELLO
United States District Judge